My name is Michael Bigelow and I represent Michael Rothwell. I will attempt, probably unsuccessfully, to hold a couple of minutes for the reply. I'm the first to admit that this is sort of a weird and improbable sort of situation, at least. It seems to me that the federal rules, the state rules, and the courts all suggest, as well as the Fifth Amendment due process, all suggest that the appearance of impropriety on the part of a sitting judge is something really important and something that should not be denigrated or should not be lost. The state of California seems to recognize that they give counsel a perimetry challenge. They do give counsel a perimetry challenge. And that was not exercised here, was it? It was not, and counsel is If Rothwell thought, I mean Hubbard thought this was such an awful thing for Judge Ely to appear in his case, he could have gotten him off the case with the stroke of a pen, right? That is absolutely correct. As well, I might add, the judge himself could have recused himself under 170.1A6, I believe it is, which is almost the embodiment of 1828 U.S.C. 455. Any indication in the record of the state court proceedings that Judge Ely remembered, Hubbard? In the record itself? Yeah. No. It is inconceivable, if I may be so direct, that he would not have remembered Hubbard simply because the newspaper accounts were so pervasive and so direct, and the fact that the judge himself was interviewed, and that is in the exhibits that are part of the record or part of my record, this record at least, and the fact that the people had lost potentially at least one of his star witnesses, that, as well as Attorney Lowe, trial counsel at this particular judge did make very denigrating comments, which were as a result of extrajudicial or extrajudicial source, the newspaper and the marriage itself. There is something else that respondents counsel pointed out, and, Your Honors, it would be almost impossible to prove this 20-some years later, and I concede that, and that is that it appears, there's the possibility, and there's the possibility that Judge Ely may have directed this case to be assigned to himself. Slano County is not that big a county. At that time, there weren't that many judges. It's not like San Francisco or even Sacramento, which has got, what, 42 sitting judges. You're just speculating on that, right? You don't have proof of it. That is absolutely correct. It would be impossible to prove that Judge Ely went to the presiding judge and said, hey, I'll take this one. If that were true, it seems to me, he would have presided over the first trial. Well, no. You really had an ax to grind against your client. Why didn't he preside over the first trial? The first trial wound up in a mistrial. But it was assigned to him. Can I finish? I beg your pardon, Your Honor. May I finish? I apologize, yes. I'm awfully sorry. The first trial was tried before another judge. That is correct. And was that randomly assigned? As far as I know, yes, Your Honor, it was. Then to me, isn't it just as logical to argue that if Judge Ely or Eli, however you pronounce it, had an ax to grind against Hubbard, he would have wanted to manipulate the assignment system, he would have done it for the first trial. I am not suggesting for a minute that he attempted deliberately to manipulate, which is why— I thought that's just what you said before Judge Seiler asked his question. And it wasn't what I meant to say. I am saying that that specter is out there. I'm not saying that he did it. I'm saying that the specter is out there. And it is— Let's assume there's a specter out there. What does that mean? What's the relevance of a specter? It is the appearance of impropriety, which is at stake. It is— All right. So you're not arguing that he was, that he did this or that he was biased? Well, you are. But you say that the fact that he heard the case in itself— Yes, Your Honor. —is an appearance of impropriety. Yes, Your Honor. That is exactly right. It is the appearance— It doesn't give the appearance that he asked for the assignment. I'm sorry, Your Honor. It doesn't give the appearance that he asked for the assignment. It doesn't give the appearance that he asked for— So what's the relevance of that point, that he could have asked for it but we don't know? How is that in any way relevant? Well, if that were the case— Well, sure. If that were the case or if it were the case that he had said to his wife, I'm really going to get this guy and, you know, you go and talk to the judge for me. That, if that, or if it, plenty other things. It was not an issue that I raised initially in my opening brief. It was something that was raised almost tangentially by co-counsel. At least I interpreted her saying, you know, the case was reassigned to Judge Healy. And the— I doubt that she was intending to suggest that Judge Healy went and asked for the case. I would agree, but— All right. Maybe we ought to move on to something else. Did you represent Mr. Hubbard in district court? On his— Yes. In district court, the thing that's being appealed to our court. Yes. Did you ask for an evidentiary hearing? Yes, I did. Did you get one? No, I did not. I did not get an evidentiary hearing. And the— What could you have shown if you'd had one? Your Honor, that's a very good question. I don't think that I— You could have called the judge, but he'd probably say he wasn't biased. And we had a status conference. Different counsel was there. Ms.— I forget who it was, but— Do we know why the county public defender who represented Hubbard in the two trials did not move either to peremptorily challenge Judge Healy or to challenge him for cause? Yes, Your Honor, I believe we do. I spoke to him, and his affidavit is attached, and it's part of the record. He states that although he was aware of the— I refer to it as pervasive publicity— he did not believe that it would manifest itself in such a way— in the way that it did. And it manifested itself by the comments made outside the presence of the jury. And another point that I— He didn't realize it was going to happen that way. He didn't realize— Back in those days, if I may, Your Honor, 170.6 and a judge was kind of a bad thing. It was something you didn't want to do because it affected— There was a degree of collegiality, and unless it was really something awful, you just didn't do it because you didn't want to affect anything in the polls. You didn't want to accuse a judge. We all believed back then that 170.6 went up to the judicial council, and it was a black mark against them, and so we didn't do it. And by and large, judges did not abrogate that trust or did not go— Is it fair to describe the deputy public defender's decision not to preemptorily or for cause challenge this judge as a tactical decision? Probably not tactical in the sense that we refer to usually making tactical decisions. I don't think it was a tactical decision that he wanted this judge to try the case or a tactical decision to not to object. Well, you told us, again, by way of speculation, that one of the reasons people don't exercise preemptory challenges is it destroys collegiality, and it might hurt the lawyer down the line. It might hurt the judge down the line. Yeah, it might hurt the judge down the line. Is that tactical? In that sense, it would be tactical. You don't want to hurt the judge? Yes. But is it tactical in the sense that it's tactical for the purposes of this particular case, or is it tactical in the sense that you want to get a better result in future cases? No, Your Honor, I don't believe so. Which? I don't believe which. I don't think either one. I think it's just a— I understand you to be saying that the reason lawyers didn't challenge judges in that small county, and particularly a lawyer who has to regularly appear before the judge, is that it wasn't a good idea. It was the breach of the judicial bar relationship, basically. So if it's tactical, is it tactical in relation to the particular case or tactical in relation to the public defenders who appears regularly before that judge? Well, I— Okay, well, okay. I think the answer's there. All right. I know, Your Honor, in almost 30 years of practice, almost 30 years of practice, I have papered, affidavited one judge. And I do that because I believe in the integrity of the system. I've always believed in the integrity of the system. Now, what— David Lowe's position, the lawyer trying this case, may well have been the same. It is something that I think we all did. Just tell me one thing. What is it that the judge said during the trial that convinced— Was it Mr. Lowe? Mr. Lowe, yes. That convinced him that he was wrong when he assumed the judge would be fair? He speaks— Otherwise. He— And I apologize for interrupting. I have gotten into this horrible habit, Your Honors, and I apologize again. But it is a— Mr. Lowe, when I was dealing with him for this affidavit, could speak only in general terms. The most specific he could get was, as set forth in his affidavit at paragraph 7, which is line 34 of my excerpts of record, During the course of the trial, he exhibited a strong dislike for and bias against Mike Rothwell. It was patently obvious Judge Eli held Mr. Rothwell for— responsible for public embarrassment that he, Judge Eli, suffered for having performed the marriage ceremony and depriving the prosecutor. And if you'd had an evidentiary hearing, as Judge Seller asked, Judge Seller, you would have been able to show what's in the affidavit. I believe that to be the case, Your Honor. In fact, Judge Moulds was the magistrate judge in this, and we had different counsel. But the same question was posed to me then, and my response was pretty much— during the status conferences—was pretty much the same. Again, this is not— So basically, you get down to the fact that there was no reason to believe from the facts that the judge would be biased. There was no reason that he should have recused himself unless in his heart there was something that we didn't know. And it turned out that there was, and the evidence of that is contained in the affidavit that says he was generally unfriendly. That is exactly right. The appearance of impropriety. But there wasn't an appearance in itself. You see, that's the point. You're not saying that had he behaved decently in the trial that there would have been anything wrong, because there was no reason to think that this act was sufficient to require recusal. 455. 455, which is pretty much the embodiment of all of which we are speaking, says that he should disqualify himself in any proceeding in which his impartiality might reasonably be questioned. But you say the lawyer was not unreasonable in not challenging it, knowing those facts, that that was a reasonable position to take. And he shouldn't recuse himself. There was no requirement that that was a reasonable view. From his perspective, from his perspective, it was. His perspective, not that of the reasonably objective person. In hindsight, 100 percent hindsight, he was wrong at the time. Now, you're also telling us that you wouldn't have recused the judge either. Not then. I would now. I would now. But I think the question is not what I would have done, not what Mr. Lowe would have done, but what the judge himself should have done. The judge knew more about his feelings. And so then it depends on what the judge's feelings actually were, which is where I started. It's not the facts themselves. It's what the judge's feelings were. And you're saying because he had those feelings that nobody knew, he should have recused himself. And yes, Your Honor. And the only way we know about those feelings is the affidavit. That's before us from Mr. Lowe. And that's what the case rests on, whether that affidavit is sufficient to show that the judge was biased. That's correct, because I would state also that at least three lawyers had looked at the judge's rulings in this case. Trial counsel, appellate counsel, and me. There is nothing suspect, and I hate to concede this point, but there is nothing suspect about any of those rulings. There is nothing particularly untoward about any of those rulings. If there was, you could have taken a direct appeal, right? I'm sorry? If there was a direct appeal, it could have been taken and reversed the case, right? If there were, it would have been reversed on direct appeal. That's absolutely correct. And then, of course, yes. What you're telling us is if you retype the transcript and put in Judge Smith instead of Judge Ely and handed the transcript to 15 experienced criminal defense lawyers in your community, they would have come to the same conclusion. In fact, that's my note. The court has, precisely other than saying Judge Smith, reiterated the note that I have before it. Sort of reminds us of the 1984 presidential campaign. Where's the beef? That's the beef, Your Honor, is in Judge Ely's heart. If I may. Under the statute, recusal is required in any proceeding in which a judge's impartiality might reasonably be questioned. I think we would explore that. Okay. Thank you, Counsel. So much for my two minutes. Thank you very much. And again, Your Honor, I apologize for having interrupted. No, no. Thank you. That's fine, Counsel. Peggy Ruffray, Deputy Attorney General for Respondent. It's our position that the question here is whether the state court's denial of relief was objectively unreasonable. The judge is presumed impartial and the defendant has to show either actual bias or an appearance of impropriety that is so substantial that it can be construed as actual bias. Were motions made after post-conviction in the state proceedings addressed to this issue? No, the defendant did nothing to challenge this issue for 12 years. He was convicted and the first time he did anything to challenge the judge's impartiality was in his state habeas petition, which was 12 years later. In the state habeas proceedings, did he ask for an evidentiary hearing? He did not ask for an evidentiary hearing. And he didn't even submit the declaration of counsel, which we have been discussing now, which raises these sort of vague allegations that the judge disliked him or something. That was only raised in the federal habeas proceedings, which it's our position that that absolutely precludes an evidentiary hearing. The AEDPA statute governing evidentiary hearings says that if you fail to develop your claim, the factual basis of your claim in state court, then the federal court can't have a hearing. Well, I don't think we have to worry about a hearing because counsel's agreed that the only thing that would be at the hearing is the affidavit, which is in the record. I'm sorry, I didn't hear the last part. I said, I don't think we have to worry about whether there should be a hearing because counsel has agreed that all that would be at the hearing would be the affidavit, which is already in the record. So I don't think there's a question about having any hearing. But I think your point is that we look at the reasonableness of the state court decision through the prism of no request for an evidentiary hearing and no affidavit of counsel. Correct. Now, there are really two different issues. Well, the first is whether just knowing the facts about the marriage, the judge hearing before the marriage, whether there was an appearance of conflict that he should have accused himself of, that it's a violation if he didn't. The second issue is whether during the trial, he exhibited such bias. And that all depends on the affidavit. And you're saying we should only consider the first issue. No, I'm not saying that. I'm just saying that as far as whether to have an evidentiary hearing, the circumstances show that from the evidentiary hearing, you agree that both those issues are properly before us. Well, I think that those are both issues that the court can consider. Yes. But I don't think that either one of them has merit on the first issue about the media coverage. First of all, as far as I can tell, the only thing that's in the record is two articles. And they're really relatively mild. They make the defense attorney look much worse than the judge. The defense attorney looks like he's manipulating the evidence and trying to pull a fast one on the judge. The judge looks like he fell for it. The judge looks like he made an honest mistake. That's about it. I couldn't tell from the record. Did Judge Eli perform this marriage? That's the impression that I got. Be a little hard to argue that he wasn't aware of who was before him, right? You mean two months, two and a half months later when the trial occurred? Yeah. No, he probably did remember the defendant as the one that he had married. And then there had been these two articles. Did he marry him before the first trial? Yes. Yes. And then when there was a mistrial, when did the articles appear? I'm not sure. I don't know whether it was before the first trial or in between trials. I believe, no, I believe they were early on in the proceedings, but I don't know exactly when. But in those articles, the judge, the DA, and the defense attorney all agreed that this witness's testimony was not really significant. It looks to me like the most she could have testified to was that the defendant told her that he was wanted for murder in California. And then that ultimately led to his arrest. Well, that was not in dispute. The only way her testimony really could have been significant was if he had said, I deliberately shot that man instead of the gun accidentally went off. Which was not a witness in any event. She was not a witness because she was missing by that time. So even if the marriage hadn't happened, she couldn't be found. So the bottom line was she was not going to be called one way or another. And the actual articles, if you read those two articles, they're really fairly mild. Judges are presumed to be used to media criticism. And I know that this court sometimes is subject to- We're never criticized. I'm sorry? We're never criticized. Well, assuming arguendo that there might be publicity about the court- Do judges run for election in this county? Do judges run for election in this county? I believe they do. I believe they do. It's not a yes, no retention thing? It might be retention. I'm not positive about Solano County. In any event, they do have to worry about- At some point, they have to stand whether it's running against an opponent or a retention election or something. But again, this was really very mild considering some of the kind of critical articles that might come out against a judge where no recusal is required. On the second point- You weren't talking about media criticism as a result of statements by the attorney general's office by any chance? Not at all. The case that came to mind was the Newdow case where there was national media coverage and the court didn't feel that it had to recuse itself from the petition for rehearing, which happened after the article- About criticism of our habeas decisions by the attorney general? I think, again, that's relatively mild and the court can take it. I feel confident that the court can handle whatever we may dish out. But there is a difference between a state court judge who has to stand for some kind of election and those of us who have the privilege of life tenure, isn't there, for these purposes? Yes, and I agree with that 100% in the abstract. But again, looking at the facts of this particular case, these two articles were really relatively mild and certainly didn't give rise to the kind of appearance of impropriety where actual bias can be presumed from that. It has to be really direct and substantial because the presumption is that the judge is impartial. And this judge knew that he could recuse himself. He didn't feel that he had to. The defense attorney didn't feel he had to. From reading the record, do you know what the comments are that were not made before the jury that caused the defense- It's only an allegation. No. And it was made 17 years after the event. So we have the declaration 17 years later where the defense attorney says that he said something to the effect of the defendant was a bad man and guilty of murder. That's it. That's the only statement we have. There was, as the court has discussed- I wondered whether you had seen the transcript and knew what it was that referred to. Well, no. There is nothing in the transcript. That's the whole point. Throughout the entire trial, the judge didn't make any comments on the record- No, no. I know this wasn't made before the jury. I wondered whether- If these remarks were made at all, they are not contained in the transcript. Correct. They were allegedly made off the record and outside the presence of the jury. And again, it's not even that those were the words the judge said. It's something to that effect is all the defense attorney says. We don't know when in the course of the trial it was made. We don't know if it was made after the jury, in fact, found him guilty. It's an extremely vague allegation. Again, made many, many years later. And there's no evidence that the defense attorney objected to those statements on the record. Anything you'd like to close with? Yeah. As a matter of fact, there was a case mentioned in the first case argued, the Himes case, which just came out on Thursday, which would conceivably apply to this case. That's the one where the court said that the Delgado versus Lewis standard would still be the case where the state court has a summary denial. And our office challenges that in light of Early versus Packer. I think we intend to pursue further proceedings in the Himes case. It doesn't change the outcome here. It does not change the outcome here at all. Even if this were not an ADPA case, I don't think the outcome would be any different. But the point is that the attorney indicated that the Himes case and the Delgado standard is that there is no deference when there is a silent denial. And I don't think that's the case. Even under the Delgado standard, the court conducts an independent review of the Federal law, but then gives deference applying that independent determination of law. And I think it's an important point to know that not all cases Don't think it's an important point for this case, do you? Well, there was a silent denial in this case, so that would be technically But you don't think we're going to have to reach that issue in this case? I don't. I don't. Thank you. Thank you. Thank you. I think you. Case just arguably submitted. The court stands in recess for the dead.
judges: Reinhardt, Siler , Hawkins